**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0877n.06
Filed: October 28, 2005

**NO. 04-3346**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MARILYN COCHRAN, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| UNITED STATES OF AMERICA, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Respondent-Appellee. | ) | |

Before: DAUGHTREY, MOORE, and McKEAGUE, Circuit Judges.

**PER CURIAM.** The petitioner, Marilyn Cochran, pleaded guilty to a charge of possession with intent to distribute crack cocaine and received the statutory mandatory minimum sentence of 120 months in prison. She did not seek direct review of her conviction or sentence, but she later filed a petition pursuant to 28 U.S.C. § 2255 to "vacate, set aside, or correct" her sentence. In that filing, she alleged, among other claims, that her original attorney provided her with ineffective assistance of counsel by failing to give her adequate advice regarding the applicability of the safety valve provisions of 18 U.S.C. § 3553(f). The district court denied relief without holding an evidentiary hearing, and Cochran now contends that the district court erred in failing to provide her with a hearing.

Because we conclude that the issue raised in Cochran's petition could be, and was, correctly resolved on the existing record, we find no error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The petitioner and the government do not dispute the facts relevant to this appeal. Both sides agree that Cochran allowed other individuals to use her home for the sale of crack cocaine for several years in exchange for payment of rent and utility bills. Eventually, the petitioner began selling crack herself from the residence. During 2001 and early 2002, in fact, law enforcement officials made several controlled purchases of crack from the petitioner at her home. When the authorities executed a search warrant for the premises, they recovered cash, portable scales, 430.9 grams of marijuana, and 68.29 grams of cocaine base. They then arrested Cochran, who was charged with multiple offenses in a six-count indictment.

The petitioner readily admitted her complicity in the crimes and entered a plea of guilty to a count of possession with intent to distribute cocaine base. In exchange, the government agreed to dismiss the remaining counts of the indictment. Cochran explicitly reserved, however, "the right to appeal an adverse decision as to the applicability of the 'safety valve' provisions . . . ."

At the time of sentencing, the district court noted that the statutorily-mandated minimum sentence for the offense for which Cochran was convicted was 120 months in prison. Nevertheless, by application of the "safety valve" provisions of the sentencing guidelines and the applicable statute, the petitioner's sentence could have been reduced to only 70 months. In order to take advantage of that reduction, however, the court was required to find that Cochran "truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5).

For reasons best known to the petitioner, Cochran steadfastly declined to proffer the information deemed essential by the government to justify application of the safety valve provisions. The petitioner even executed a signed statement indicating her understanding of the option she was rejecting: "I understand that . . . I may qualify for the safety valve. I still do not want to cooperate with, by speaking to, the police or the prosecutor. I understand that by this decision, I will not be eligible for the safety valve. That is my final decision." Giving Cochran yet an additional opportunity to avail herself of the statutory leniency in sentencing, the district judge offered the petitioner a short recess before imposition of sentence to consult with her attorney regarding the benefits of testifying about information she had about the drug operations with which she was involved. Cochran tersely replied, however, "Your Honor, I have nothing to say anymore." Given no other choice, the district court then ruled:

Well, I appreciate that this has been a difficult case. The Congress has adopted the safety valve provisions and had them incorporated into the sentencing guidelines as some form of relief, if you will, from the mandatory minimum sentences that are provided, especially for drug offenses, and especially for cocaine offenses. And the court applauded that legislation when it came into being, and it provided another opportunity for the court to somehow soften the very, very harsh sentences that the Congress has pr[e]scribed for people dealing with crack cocaine. And there is no dispute that the defendant qualifies under the first four provisions of 5C1.2(a)(1), (2), (3) and (4). The flashpoint has always been whether or not the defendant has truthfully provided to the government all information and evidence the defendant has concerning the offense or offenses, et cetera.

Now there isn't any exception in there for not disclosing information about friends or relatives, children, or parents; the Congress has not seen fit to do that. And the defendant, in effect, has to earn his or her way to that particular safety valve credit.

I've listened carefully to the testimony of Agent Dustin, and I've listened and read with interest the statement of the defendant. And the court finds by clear and convincing evidence that the defendant has not truly provided the government all information and evidence she had concerning the offense or offenses. I find the testimony of Agent Dustin to be trustworthy.

I recognize that people who are in difficulty frequently will attempt to make things better for themselves by cooperating with the government. This courtroom is strewn with people who have been convicted on the testimony of cooperating co-defendants. There is nothing unusual about that. And anyone who undertakes to engage in criminal conduct has to appreciate the fact your friends and neighbors may actually turn on you if you elect not to turn on them. That's all right but you are not entitled to the privileges of the safety valve provisions if you elect not to fully cooperate. And I find that the defendant has not truly provided the government with all information and evidence concerning this offense. In fact, it seems to the court there are significant amounts that she knew that she did not disclose, as I see it.

She did not come up with the last names of many people. She did not describe Webb. She did not describe her brother engaging in any criminal conduct.

In any event, the court will deny the defendant's request for credit for complying with the safety valve provisions set forth in Section 5C1.2. And

what the court is saying now will constitute its opinion for purposes of appeal
that presumably the defendant will wish to file.

Cochran chose not to appeal her conviction and sentence directly to this court. Instead, she waited approximately one year and filed a motion "to vacate, set aside or correct [her] sentence" under 28 U.S.C. § 2255. In that motion, Cochran alleged that her attorney at the plea and sentencing stages provided her with ineffective assistance of counsel by failing to request a competency hearing, by failing to inform her of the decision not to appeal her sentence, and by providing incorrect advice concerning the application of the safety valve provision of the sentencing guidelines. The district court found no merit to any of the claims and dismissed the petition without an evidentiary hearing. After also denying a motion for reconsideration, the district judge granted Cochran a certificate of appealability "on the sole question of whether the petitioner was, on the record before the Court, entitled to an evidentiary hearing on the claim that she was denied the effective assistance of counsel with respect to counsel's advice regarding her compliance with the safety valve requirements."

## DISCUSSION

Pursuant to the provisions of 28 U.S.C. § 2255, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the district court shall "grant a prompt hearing" on the issues raised in the petition and "make findings of fact and conclusions of law with respect thereto." Yet, while petitioner's burden

for establishing entitlement to an evidentiary hearing is "relatively light," the burden is not met simply by proclaiming one's innocence. *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). Ordinarily, a material factual dispute must be shown to warrant an evidentiary hearing. *Id.* The district court's decision whether to hold an evidentiary hearing on a § 2255 motion is reviewed under the abuse of discretion standard. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003). In this case, the sole issue before the court involves a claim of ineffective assistance of counsel regarding the advice given to Cochran concerning the application of the safety valve provision of the relevant statute and guidelines section.

In addressing this issue, we are guided by the now-familiar construct of *Strickland v. Washington*, 466 U.S. 668 (1984). As required by that analytical framework:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

In *Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997), discussing the first prong of the *Strickland* analysis, we recognized:

> The [Supreme] Court cautioned that in undertaking an ineffective-assistance review, "[j]udicial scrutiny of counsel's performance must be highly deferential," and must avoid the "second-guess[ing of] counsel's assistance . . ., [as] it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689 . . . . In order to avoid "the distorting effects of hindsight," a reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted).

Furthermore, in evaluating the prejudice suffered by a petitioner as a result of alleged ineffective assistance of counsel, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* (citation omitted). Rather, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Finally, in conducting this inquiry, we need not apply *Strickland*'s principles in a mechanical fashion. As the Supreme Court explained:

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim

> on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Id.* at 697.

Obviously, we may begin our review by determining whether counsel's performance was deficient, or we may first examine any possible prejudice suffered by Cochran. In either event, the result in this case is identical. Under the safety valve provisions of 28 U.S.C. § 3553(f) and § 5C1.2(a) of the sentencing guidelines, a sentencing court may ignore federal statutory minimum sentences if:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise . . .; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Here, the government does not argue that Cochran did not meet the first four of the safety valve criteria. Rather, the record clearly establishes that Cochran deliberately did

not provide all the information she possessed regarding the criminal activities in which she was involved. The petitioner has not adduced, and indeed cannot provide, any evidence of her willingness to assist the prosecution in further investigations of the individuals involved in the drug distribution network. In response to questioning from the district judge, Cochran consistently refused to provide additional information. The petitioner's counsel at the time stated that she had explained the safety valve provision to Cochran repeatedly, but that Cochran still did not want to speak to the police or the prosecutor, even if such lack of candor eliminated her from eligibility for application of the safety valve.

The record on appeal contains no evidence that Cochran's attorney breached her ethical duty in representing the petitioner. Similarly, given the petitioner's reluctance to assist the police in the prosecution of her friends and relatives, there is no indication that Cochran would have received the benefits of the safety valve provision no matter what actions her attorney had undertaken.

The only supplemental "evidence" cited by the petitioner was presented in support of her motion for reconsideration almost four weeks after the district court had denied her § 2255 motion. It consists of an anonymous handwritten letter purportedly authored by an inmate acquaintance after, and in response to, the district court's denial of § 2255 relief. It calls into question the petitioner's reading ability and her ability to comprehend the consequences of her decision not to cooperate with the government. The petitioner now argues that this letter creates doubt about her ability to understand her attorney's advice

prior to sentencing and substantiates the need for a psychological examination and evidentiary hearing.

In our opinion, the letter is entitled to little, if any, weight. Even accepting it at face value, the unsigned letter of a friend expressing an opinion of concern and conjecture about the petitioner's state of mind over a year earlier, hardly represents the sort of "newly discovered evidence" that would justify reconsideration. The petitioner, who is represented by counsel, has made no apparent effort to authenticate the letter or corroborate its contents. Neither did she respond in any fashion to the district court's order to advise the court in writing whether, in light of the government's facially persuasive opposition to the § 2255 motion, the court really needed to conduct an evidentiary hearing and, if so, on what basis. That is, despite the explicit requirement to substantiate her claim by at least *explaining* what purpose would be served by an evidentiary hearing, the petitioner made no response until after the court had denied her motion. This failing has not been adequately explained or excused. Under these circumstances, we find no abuse of discretion in the district court's refusal to afford the petitioner an evidentiary hearing, initially or on reconsideration.

## CONCLUSION

The petitioner has failed to produce any facts that would justify expenditure of judicial resources to conduct an evidentiary hearing on her ineffective-assistance-of-

counsel claim.  We therefore conclude that the district court correctly denied Cochran's

§ 2255 petition without such a hearing and AFFIRM the judgment of the district court.